# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 1:12-cv-279

| | |
|---|---|
| CANDICE SHELTON, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN,[1] <br> Commissioner of Social Security, <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (Doc. No. 10), and "Memorandum in Support . . ." (Doc. No. 11), Defendant's "Motion for Summary Judgment" (Doc. No. 12) and "Memorandum in Support . . ." (Doc. No. 13). This matter is now ripe for review. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment and AFFIRMS the Commissioner's decision.

## BACKGROUND

I.  PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") on March 6, 2008, and for supplemental security income ("SSI") on March 6, 2008 (Doc. No 7-1), alleging she had become disabled on June 15, 2007. After Plaintiff's claim was denied, Plaintiff subsequently requested a hearing, which was held before an administrative law

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

judge ("ALJ") on May 4, 2010. On May 25, 2010, the ALJ determined Plaintiff was not disabled. Id. Plaintiff then requested review of the ALJ's decision (Tr. 134-135), which was denied on August 17, 2011, by the Appeals Council. (Tr. 9-14). This action was vacated on March 28, 2012, granting Plaintiff's request for more time. (Tr. 7-8). After receiving a duplicative letter from Lynn Burrough, LCSW, and a brief from Plaintiff's counsel (*see* Tr. 246-249, 493-494), the Appeals Council again denied Plaintiff's request for review on July 10, 2012. (Tr. 1-4). This was the final decision of the Commissioner, making the case ripe for review under 42 U.S.C. § 405(g).

II. FACTUAL BACKGROUND

Plaintiff has been experiencing difficulties with her ankle after numerous years of work. After the pain intensified, Plaintiff began to consult numerous doctors to help alleviate the problem. (Doc. No. 11). On April 13, 2007, Dr. McClelland performed an MRI, which revealed an osteochondral fracture. This fracture allegedly caused stiffness, significant pain, and limited motion in Plaintiff's ankle. Id. at 3. Plaintiff was referred to Dr. Przynosch, who gave her an injection in her ankle on April 13, 2007. This treatment reduced the pain, but Plaintiff alleges that it was only for a short period of time. Furthermore, Plaintiff alleges that she was required to use either a boot or crutches to walk effectively.

The ALJ found that the impairments regarding Plaintiff's ankle resulted in significant vocational restrictions and therefore were severe. (Doc. No. 7-1). In addition, the ALJ found that Plaintiff's impairments did not meet specifically listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Plaintiff alleges, however, that Listing 1.02A is met, which involves a major dysfunction of a joint. The facts are in dispute as to whether the impairment is equivalent to Listing 1.02A.

Numerous doctors gave their opinions as to whether Plaintiff was disabled and the extent of the impairment. Dr. Teater, Plaintiff's treating physician, gave the opinion that Plaintiff's ankle injury was severe and she was not able to work. (Doc. No. 13). The state agency medical consultant, however, after examining Dr. Teater's opinion as well as others, found that Plaintiff was not disabled. The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), that is routine and repetitive, takes into account mild limitations with the ability to relate to others and coworkers and moderate limitations with the ability to tolerate day to day stressors. (Doc. No. 7-1). In addition, the ALJ found that Plaintiff could perform numerous jobs in the national economy.

## STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g), and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). District courts do not review a final decision of the Commissioner *de novo*. Smith v. Schweker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the

3

Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court may not re-weigh conflicting evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456. The court may set aside a determination of the ALJ only if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### ANALYSIS

The Social Security Administration ("SSA") uses a Five Step Sequential Evaluation Process ("SEP") when determining the validity of disability claims. 20 C.F.R. § 404.1520. Applying this process, first, the ALJ found that Plaintiff was not insured through September 30, 2008, for Title II purposes and that she had not engaged in substantial gainful activity since her alleged onset date of June 15, 2007. (Doc. No. 7-1). At the second step, the ALJ found that Plaintiff had severe impairments of athralgias, fibromyalgia, osteochondritis dissecans of the foot, and an affective disorder. Id. At step three, the ALJ found that Plaintiff did not meet any specific disability listing. Id. The ALJ at step four found that Plaintiff had the RFC to perform light work that was routine and repetitive, which involves walking and standing six hours out of an eight hour workday. Id. The ALJ then concluded that although Plaintiff was not capable of performing her past relevant work, she was capable of performing other jobs, and thus was not disabled.

Plaintiff specifically challenges the ALJ's decision with regard to step three. Plaintiff claims that the ALJ erred in its assessment of Plaintiff's medical impairments under the disability listing. In addition, Plaintiff also alleges that the ALJ erred in his evaluation of the medical

opinions in the case, and therefore improperly based its decision that Plaintiff was disabled.

> I. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF'S ANKLE IMPAIRMENT DOES NOT MEET THE REQUIREMENTS FOR LISTING 1.02A.

Plaintiff contends that the ALJ erred in two aspects with regard to Listing 1.02A. First, Plaintiff states that the ALJ did not list the requirements of Listing 1.02A or evaluate whether Plaintiff met those requirements. Next, Plaintiff argues that in fact, she meets those requirements of Listing 1.02A.

> A. The ALJ is not required to specifically discuss the criteria of Listing 1.02A.

It is well established in the Fourth Circuit that it is not necessary for the ALJ to specifically break down each of the listing criteria. See Russell v. Chater, No. 94-2372, 1995 WL 417576, at *3 (4th Cir. 1995) (distinguishing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). Generally, there are numerous applicable conditions, thus as long as the ALJ discusses relevant medical evidence and the record is sufficiently discussed, there is no error. Id.; Clark v. Comm'r of Soc. Sec., No. 2:09-cv-417, 2010 WL 2730622, at *17 (E.D. Va., June 3, 2010); Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (only requiring the ALJ to specifically address listings if "there is ample evidence in the record to support the determination that the impairments meet or is medically equivalent to one of the listed impairments.").

For instance, in Russell, the plaintiff challenged the ALJ's decision, claiming that the decision was insufficiently specific with regard to the listing criteria. 1995 WL 417576, at *3. The court found that although a specific listing was not discussed, the ALJ detailed and amply explained its reasoning throughout the entire record as a whole. Id. Also, in Smith v. Astrue, the ALJ did not mention Listing 1.02 during step three. 457 F. App'x 326, at 327 (4th Cir. 2011).

The court found, however, that the ALJ's decision as a whole supported the finding that the claimant's impairment did not meet any listing. Id.

Similarly to Russell and Smith, the ALJ in the current case did not specifically describe nor mention the listing in question. The ALJ, however, did specifically describe and evaluate Plaintiff's impairment throughout the entire record. First of all, the ALJ discussed Plaintiff's ankle impairment and found osteochondritis dissecans as a severe impairment. (Doc. No. 7-1). In addition, the ALJ consulted Dr. Woods, a state medical consultant, who gave the opinion that Plaintiff's impairments did not meet or equal Listing 1.02A. Id. Further, the impairment was thoroughly discussed when determining Plaintiff's RFC. All of this evidence establishes that the ALJ considered the impairment even though it was not explained in step three, the listing stage. Therefore, the ALJ's decision that Plaintiff's impairment did not meet Listing 1.02A was supported by substantial evidence.

B. <u>Plaintiff failed to establish that its impairment met the criteria of Listing 1.02A.</u>

The burden of establishing each requirement in a listing is on the plaintiff. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The required elements of the listing include:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation or motion of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). 20 C.F.C. Part 404, Subpart P, Appendix I § 1.02.

The first requirement is that the major dysfunction of a joint must be characterized by "gross anatomical deformity." Id. In order to meet this listed impairment, the plaintiff must satisfy all medical criteria specified under that listing. See Sullivan v. Zebly, 493 U.S. 521, 531 (1990). "Gross" is not defined in the regulatory authority, thus the commonly accepted meaning

of the word is to be applied. See Jonas v. Schweiker, 551 F. Supp. 205, 208 (D. Md. 1982) (using dictionary definition in defining "significant" in Listing 12.05C); see also Townsend v. Heckler, 581 F. Supp. 157, 159 (W.D. Va. 1983).

Here, the Commissioner properly applied the common medical definition of the word "gross," which refers to something "course or large; visible to the naked eye; as gross pathology; macroscopic; taking no account of minutae." Saunders, Dorland's Illustrated Medical Dictionary 800 (30th ed. 2003). In addition, the examples identified in Listing 1.02A all represent conditions that would be detectable without the aid of imaging studies. See 20 C.F.R. Part 404, Subpart P, Appendix I § 1.02. The record establishes that the only deformity that could be detected without the aid of imaging studies is pes planus ("flatfoot") deformity. (Doc. No. 7-1). The impairment at issue, however, is only able to be detected through an MRI, not the naked eye, thus does not meet the requirement of a "gross anatomical deformity." Id.

As discussed above, Plaintiff has the burden of establishing that her impairment meets the medical listing requirements. See Hunter, 993 F.2d at 35. Plaintiff omits the requirement "gross anatomical deformity" rather than providing a definition. Therefore, Plaintiff, by not establishing that her impairment was a "gross anatomical deformity," failed to meet her burden of meeting all requirements of Listing 1.02A.

In addition, Plaintiff has not sufficiently established that the osteochondritis dissecans has resulted in "bony destruction" rising to a "gross anatomical deformity." (Doc. No. 7-1). The applicable evidence with regard to this impairment is an MRI that revealed a "fracture had already occurred with a fragment at least partially detached in joint space." (Tr. 273). However, this is not sufficient to establish "bony destruction" as required by Listing 1.02A. Evidence including an examination by Dr. Dubiel stating there is "no bony enlargement, swelling,

effusion, erythema, or deformity of any joint," contradicts Plaintiff's assertion. (Tr. 296). As noted above, the osteochondritis dissecans must be a "gross anatomical deformity," thus able to be observed naturally, not by an imaging aid. Therefore, this Court finds that there is substantial evidence that Plaintiff's ankle impairment did not meet the medical requirement of a "gross anatomical deformity," specifically with regard to "bony destruction."

Turning to the next Listing 1.02A requirement, Plaintiff's medical records are not clear and are even inconsistent as to whether chronic stiffness or limitations in range of motion of the ankle are present. 20 C.F.R. Part 404, Subpart P, Appendix I § 1.02. Plaintiff alleges that she has stiffness and refers to a record from Dr. Banks that indicates Plaintiff's foot "locks up." (Doc. No. 11). Also, Plaintiff claims that the range of motion of her ankle is "abnormal" and has a painful range of motion. Id. However, the ALJ found that the medical records did not identify a restricted range of motion. (Doc. No. 7-1). For instance, Dr. Banks described her ankle motion as normal even though painful at the end range of motion. (Tr. 296). Also, Dr. Dubiel's examination provided that there was some limited range of motion, but only a mild impairment in the ability to stand or walk. (Doc. No. 7-1). Plaintiff has not established specific evidence to contradict these medical examinations, and thus has not met her burden in establishing the requirement of Listing 1.02A. Therefore, after reviewing the record as a whole, this Court finds that there was substantial evidence that Plaintiff's ankle impairment did not meet the "stiffness" or "limitation of motion" requirement.

Also, Plaintiff must show that her impairment resulted in an inability to ambulate effectively. 20 C.F.R. Part 404, Subpart P, Appendix I § 1.02. Effective ambulation is defined by 20 C.F.R. Part 404, Subpart P, Appendix I § 100B(2)(b)(2) as follows:

To ambulate effectively, individuals must be capable of sustaining a reasonable

> walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace . . . the inability to carry out routine ambulatory activities, such as shopping and banking . . . The ability to walk independently about one's home without the use of assistive devices does not, in an of itself, constitute effective ambulation.

Plaintiff asserts that she is unable to ambulate effectively for two reasons: (1) she is not capable of carrying out her activities of daily living without traveling with a companion, and (2) she uses crutches and cannot walk a block at a reasonable pace without severe pain. (Doc. No. 11).

However, the ALJ considered evidence to the contrary of Plaintiff's assertion. For instance, the ALJ noted that Plaintiff's routine activities involved cleaning the house as well as walking and playing with her children. In addition, Plaintiff stated that although she only drives when necessary, she is able to shop for food, clothing, and other essentials. (Tr. 286). Also, Plaintiff's husband stated that Plaintiff took care of him and the children, even with her ankle impairment. (Tr. 193). Therefore, the ALJ had substantial evidence indicating that Plaintiff was able to conduct routine daily activities without assistance, thus being able to ambulate effectively.

The evidence does not demonstrate that Plaintiff was constantly in severe pain. For instance, Dr. Robert Przynosch gave Plaintiff an injection containing dexamethasone acetate and Feldene. Plaintiff not only stated the pain went away, but that the injection felt "absolutely incredible." (Doc. No. 7-1). Additionally, Plaintiff's husband's function report in 2008 indicated that the pain of the impairment is only intermittent. He noted that Plaintiff would go out when her foot and ankle were not hurting. Also, he stated that she could walk for ten minutes and then rest for ten minutes. This indicates that Plaintiff's pain not only is intermittent,

but also that Plaintiff is able to walk a block. (Tr. 193-198).

Furthermore, there is substantial evidence indicating that Plaintiff did not frequently use an assistive device for walking. Dr. Dubiel observed Plaintiff walking four steps in tandem, without difficulty, using no assistive devices. (Doc. No. 7-1). The ALJ noted she was prescribed a cane and crutches; however, after being prescribed Neurontin by Dr. Teater, the pain appeared to reduce. Thus, the examination as well as the reduced pain provides substantial evidence supporting the ALJ's decision that an assistive device was not necessary, and Plaintiff did not provide substantial evidence to the contrary establishing that requirement.

## II. THE ALJ'S DECISION WAS PROPERLY SUPPORTED BY MEDICAL OPINIONS.

Plaintiff argues that the ALJ erred by not giving controlling weight to the treating physician, in violation of 20 C.F.R. § 404.1527. The Fourth Circuit has held that a treating physicians opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.C. §§ 404.1527(d)(2) (2002); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Here, the ALJ rejected the treating physician's, Dr. Teater, opinion that Plaintiff was disabled due to her ankle impairment. A summary statement from a physician that a claimant is

"disabled" is not a medical opinion, but rather, it is an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Further, such opinions are entitled no special significance. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Therefore, the opinion by Dr. Teater that Plaintiff was "disabled" was rejected by the ALJ under the proper standard because whether Plaintiff is disabled is an issue reserved to the Commissioner.

Furthermore, the ALJ properly considered other opinion evidence that was consistent with the decision that the ankle impairment did not render Plaintiff disabled. Plaintiff claims that the examinations of Dr. McLelland, Dr. Banks, and Dr. Przynosch supported Dr. Teater's opinion that Plaintiff was "disabled." However, the ALJ examined and discussed these examinations in full and the examinations displayed inconsistencies with Dr. Teater's opinion. For instance, these examinations only found "motion abnormalities," not a restricted range of motion in Plaintiff's ankle. (Doc. No 7-1). Also, with respect to the pain in Plaintiff's ankle, which was a basis for Dr. Teater's opinion, Dr. Przynosch gave Plaintiff a Feldene injection that eliminated the pain in her ankle. Id. Therefore, since the record displayed inconsistent medical evidence, it was proper for Dr. Teater's opinion, the treating physician, not to be given controlling weight.

Finally, the ALJ properly evaluated the opinion given from the state agency medical consultant, Dr. Woods. An ALJ can give great weight to an opinion from a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with other opinions as well as objective medical evidence on the record. Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Additionally, this opinion can constitute substantial evidence in support of an ALJ's decision "in the face of the opinions of treating and examining physicians" so long as the opinion from the non-examining physician is consistent with the record as whole.

See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("the testimony of non-examining physician can be relied upon when it is consistent with the record."). Here, Dr. Woods, a non-examining state medical consultant reviewed the entire record and gave a medical opinion that was consistent with the record. Dr. Woods specifically mentioned in detail Plaintiff's ankle impairment and all related evidence numerous times in forming his opinion. (Tr. 393-400). Therefore, the ALJ properly weighed the state medical consultant's opinion because the opinion was based off a thorough review of the record and consistent with the evidence provided.

## CONCLUSION

Accordingly, the ALJ's decision that Plaintiff was not disabled was substantially supported by the evidence and the record as a whole. The ALJ correctly reviewed, considered, and explained in detail why Plaintiff did not meet Listing 1.02A. Furthermore, the ALJ properly considered all opinion evidence given by treating physicians and other medical experts. Therefore, the Court GRANTS summary judgment in favor of Defendant, DENIES Plaintiff's motion for summary judgment, and the Commissioner's decision is AFFIRMED. The Clerk's office is respectfully directed to CLOSE the case.

IT IS SO ORDERED.

Signed: July 19, 2013

Frank D. Whitney
Chief United States District Judge